UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                        :

MARIO MANNINO,                     :      06 CV 6371 (ARR)
                        :

             Petitioner,        :

  -against-                  :      OPINION AND ORDER

SUPERINTENDENT H.D. GRAHAM,  :      NOT FOR PRINT OR
Auburn Correctional Facility,            ELECTRONIC
                        :      PUBLICATION

            Respondent.      :
                        :
------------------------------------------------------------------- X

ROSS, United States District Judge:

      Mario Mannino, proceeding pro se, filed a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254 on November 27, 2006. As amended, the petitioner raises the following

claims: (1) that the admission of evidence regarding an uncharged planned robbery deprived him

of the right to a fair trial; (2) that trial counsel provided ineffective assistance by failing to

prevent the admission of evidence regarding a pending charge; (3) that the leniency provided to

cooperating witnesses violated state and federal witness bribery statutes and violated his rights to

due process and a fair trial; (4) that the admission of gruesome crime scene photographs deprived

him of the right to a fair trial; and (5) that the admission of identification testimony in violation

of state notice requirements deprived him of his rights to due process and a fair trial. See Pet'r

Supp. Mem. at 9; Crick Aff. ¶ 86. For the reasons that follow, the petition is denied.

## BACKGROUND

      The petitioner, along with a co-defendant, Victor Borchert, were charged with murder,

burglary, robbery, arson and conspiracy in connection with an incident that occurred at 82 Nixon

Avenue, Staten Island, New York and resulted in the death of Rocco Mercurio and Linda Torrone. See Crick Aff. ¶ 3. Victor Bochert died of natural causes before trial. Id. ¶ 3 n. 1. Three other individuals involved in this incident, Charles Brennan, Timothy Brennan, and Robert Geiger, pled guilty to robbery in the first degree pursuant to cooperation agreements and testified against the petitioner at trial.

On March 16, 2001, a jury convicted the petitioner of one count of murder in the second degree, N.Y. Penal L. § 125.25(1), two counts of murder in the second degree, N.Y. Penal L. § 125.25(3), and one count each of burglary in the first degree, N.Y. Penal L. § 140.30(1), robbery in the first degree, N.Y. Penal L. § 160.15(3), arson in the third degree, N.Y. Penal L. § 150.10(1), and conspiracy in the fourth degree, N.Y. Penal L. § 105.10(1). Am. Pet. ¶ 5; Crick Aff. ¶ 2. Although the petitioner was convicted of the intentional murder of Rocco Mercurio and felony murder of both victims, he was acquitted of the intentional murder of Linda Torrone. See Crick Aff. ¶ 71. On March 30, 2001, the petitioner was sentenced to an aggregate term of 82½ years to life, and the petitioner is currently incarcerated pursuant to this judgment. Am. Pet. ¶¶ 2-3; Crick Aff. ¶¶ 2, 71.

The petitioner appealed the conviction to the Appellate Division, Second Department, on January 29, 2003. In his initial brief, submitted by appellate counsel, he argued that the trial court improperly admitted evidence concerning an aborted plan earlier the same evening to rob an individual known as "Liberace" at a diner in Queens, depriving the petitioner of his right to due process and a fair trial. See Brief for Defendant-Appellant at 22, People v. Mannino, 782 N.Y.S.2d 380 (N.Y. App. Div. 2004). In a supplemental brief, filed pro se, the petitioner raised three additional arguments. Pro Se Supplemental Brief, People v. Mannino, 782 N.Y.S.2d 380

2

(N.Y. App. Div. 2004). First, he argued that his trial counsel had provided ineffective assistance by failing to prevent the admission of testimony regarding an alleged assault on Charles Brennan, one of the cooperating witnesses. See id. at 5-20. Second, he contended that he was deprived of the right to a fair trial by the admission of several crime scene photographs of the victims. See id. at 21-23. Third, he asserted that he was deprived of due process and the right to a fair trial by the admission of identification evidence without timely notice pursuant to N.Y. Crim. Proc. L. § 710.30. See id. at 24-34. On October 4, 2004, the Second Department affirmed his conviction, finding that the evidence regarding the plan to rob Liberace was properly admitted to establish the petitioner's motive and to complete the narrative regarding the crimes charged, and that the probative value outweighed any potential for prejudice. People v. Mannino, 782 N.Y.S.2d 380 (N.Y. App. Div. 2004). The court found the three issues raised the in the petitioner's pro se supplemental brief to be "without merit." Id. On December 27, 2004, the Court of Appeals denied leave to appeal. People v. Mannino, 4 N.Y.3d 746 (2004).

On December 19, 2005, the petitioner filed a motion to vacate judgment pursuant to N.Y. Crim. Proc. L. § 440.20, raising three arguments. See Motion to Vacate Judgment, People v. Mannino, Ind. No. 329/1998 (Richmond Cty. Supreme Court Mar. 29, 2006). The petitioner argued that the cooperation agreements violated state and federal witness bribery statutes, id. at 8-20, that the sentencing transcript for Charles Brennan constituted newly discovered evidence of undisclosed promises made by the prosecution to secure Brennan's testimony, id. at 20-25, and that the admission of evidence regarding the alleged assault on Charles Brennan was improper given that he was ultimately acquitted of the related charges, id. at 25-30. The petitioner's first claim was denied pursuant to N.Y. Crim. Proc. L. § 440.10(2)(c) because the petitioner failed to

3

raise the issue on direct appeal. Decision and Order dated March 29, 2006 at 1, People v. Mannino, Ind. No. 329/1998 (Richmond Cty. Supreme Court Mar. 29, 2006). The petitioner's other two claims were also denied. See id. at 1-3. On August 22, 2006, the Second Department denied leave to appeal. See People v. Mannino, No. 2006-04954 (N.Y. App. Div. Aug. 22, 2006).

On September 5, 2006, the petitioner filed a petition for writ of error coram nobis, alleging ineffective assistance of appellate counsel for failing to raise on direct appeal the argument that the cooperation agreements amounted to witness bribery. See Motion for Writ of Error Coram Nobis, People v. Mannino, 823 N.Y.S.2d 916 (N.Y. App. Div. 2006). That petition was denied, People v. Mannino, 823 N.Y.S.2d 916 (N.Y. App. Div. 2006), and the Court of Appeals denied leave to appeal on March 28, 2007. People v. Mannino, 8 N.Y.3d 924 (2007).

## DISCUSSION

### A.    AEDPA Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. The statutory language "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that, although "[s]ome increment of incorrectness beyond error is required[,] . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted).

The deferential review of state court judgments is available only when the federal claim has been "adjudicated on the merits" by the state court. Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001). If there is no such adjudication, the deferential standard does not apply, and "we apply the pre-AEDPA standards, and review de novo the state court disposition of the petitioner's federal constitutional claims." Id. (citing Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001)). For the purposes of AEDPA, a state court "adjudicates" a petitioner's federal

constitutional claims "on the merits" whenever "it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). When a state court does so, a federal habeas court must defer in the manner prescribed by AEDPA to the state court's decision on the federal claim, even if the state court does not explicitly refer to either the federal claim or relevant federal case law. Id. To determine whether a state court has disposed of a claim on the merits, the court considers: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." Id. at 314 (quoting Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir. 1999)). In addition, a "conclusive presumption" that the state court decision "rest[s] on the merits of the federal claim" applies to decisions "fairly appearing to rest primarily on federal law or to be interwoven with federal law . . . [a]bsent a clear and express statement of reliance on a state procedural bar." Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (holding that presumption of Harris v. Reed, 489 U.S. 255, 262-63 (1989), applies equally to both AEDPA-deference and procedural-bar determinations).

AEDPA also provides that any determinations of factual issues made by a state court "shall be presumed to be correct," and the petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). See Schriro v. Landrigan, 550 U.S. 465, 127 S.Ct. 1933, 1939-40 (2007).

**B.    Procedural Bar**

Federal courts may not review state court decisions that are based primarily on state

6

procedural law unless petitioner can show both cause and prejudice or a fundamental miscarriage of justice. See Jimenez, 458 F.3d at 138 (citing Coleman v. Thompson, 501 U.S. 722, 749-50 (1991)). The Second Circuit has explained that there are "two mutually exclusive categories of state court decisions of a federal claim," those that "fairly appear either to rest primarily on federal law or to be interwoven with federal law," and those "that fairly appear to rest primarily on state procedural law." Id. Where the state court uses language such as "the defendant's remaining contentions are either unpreserved for appellate review or without merit" the claim is subject to federal review. Fama v. Commissioner of Correctional Services, 235 F.3d 804, 810-11 (2d Cir. 2000). However, a state court decision stating that a claim was "not preserved for appellate review" before ruling "in any event" on the merits still amounts to a procedural default Id. at 810 n.4. In determining whether the state court based its decision on state procedural grounds, the court may look "behind the opinion to the state court's awareness of a procedural bar and the state court's practice when faced with such a bar." Jimenez, 458 F.3d at 138-39 (citing Quirama v. Michele, 983 F.2d 12, 13 (2d Cir. 1993)).

Such a procedural bar to federal habeas review may be excused, however, if the petitioner demonstrates either (a) cause for the procedural default and actual prejudice from the alleged violation of federal law, or (b) that the failure to consider the claims will "result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. A miscarriage of justice occurs "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). A

7

petitioner establishes actual innocence by demonstrating that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (internal quotation marks and citations omitted).

## C.  Petitioner's Claims

### 1.  Evidence Regarding the Planned Liberace Robbery

The petitioner's first claim is that the trial court improperly admitted evidence regarding an aborted plan earlier in the same day to rob an individual known as "Liberace" at a diner in Queens. See Pet'r Mem. at 7-13. In order for an evidentiary error under state law to constitute a due process violation under the federal Constitution, a petitioner must show "that the error was so pervasive as to have denied him a fundamentally fair trial." Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) (citing United States v. Agurs, 427 U.S. 97, 108 (1976)); Roldan v. Artuz, 78 F.Supp.2d 260, 276-277 (S.D.N.Y. 2000) (applying this rule to the admission of evidence regarding an uncharged crime). Satisfying this standard requires a petitioner to establish that the evidence was (a) erroneously admitted under New York law and (b) "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985); accord Roldan, 78 F.Supp.2d at 276.

The petitioner cannot meet either requirement. First, the evidence was properly admitted under New York law. Although evidence of uncharged crimes is inadmissible to establish a defendant's general criminal propensity, it may be admissible "when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends

8

to establish the others; (5) the identity of the person charged with the commission of the crime on trial." People v. Molineux, 168 N.Y. 264, 293 (1901); accord, e.g., People v. Alvino, 71 N.Y.2d 233, 241-42 (1987); Roldan, 78 F.Supp.2d at 277. This list of Molineux exceptions is representative of the proper purposes for which evidence of uncharged crimes may be admitted; the list is not exhaustive. See Alvino, 71 N.Y.2d at 242. For example, evidence of uncharged crimes may be admitted "to complete the narrative of events regarding the commission of the crime." See People v. Wright, 733 N.Y.S.2d 225, 226 (N.Y. App. Div. 2001) (citations omitted). "In such cases, the court may admit the evidence in its discretion if its probative value outweighs the potential for prejudice, provided that the court gives a proper limiting instruction to the jury." Wright, 733 N.Y.S.2d at 226; accord Alvino, 71 N.Y.2d at 242.

At a mid-trial hearing, the trial judge previewed the proposed testimony from one of the witnesses regarding the planned Liberace robbery, see Trial Tr. at 232-268, before concluding that the evidence was admissible to complete the narrative of events leading up to the charged crimes, see id. at 269, to explain the motive for the charged crimes – "trying to get money for heroin," id. at 270 – and as evidence of a common scheme or plan. See id. at 270-71. The trial judge found that the evidence would result in "minimal" prejudice because the planned robbery did not advance very far. Id. at 269. The trial judge provided limiting instructions immediately after the challenged testimony, id. at 1503-05, and again at the end of the case. Id. at 2026-28.

On appeal, the Second Department concluded that the evidence was properly introduced to establish the petitioner's motive for, and to complete the narrative leading up to, the charged crimes, and that the probative value outweighed the potential prejudice to the defendant. People v. Mannino, 782 N.Y.S.2d 380 (N.Y. App. Div. 2004) (citations omitted). This court agrees with

that determination. The evidence supplied information regarding the petitioner's motive for committing the charged crimes and rebutted the suggestion by defense counsel that only Victor Borchert had sufficient motive to commit the crimes. See, e.g., Trial Tr. at 31-34. The evidence also supplied relevant background information and completed the narrative regarding the course of events that led up to the incident for which the petitioner was charged. Robert Borchert testified, for example, that both plans – the planned Liberace robbery and the incident on Staten Island for which the petitioner was charged – originated from a conversation among the co-conspirators about various ways to "mak[e] a quick dollar." Id. at 295. Similarly, Robert Geiger testified that the co-conspirators decided to go "rob somebody on Staten Island" after they had "abandoned" the plan to rob Liberace. Id. at 906. The evidence indicates that the petitioner and his co-conspirators came with one plan to obtain money to purchase heroin, by robbing Liberace, and when that plan was foiled, they then decided to go to Staten Island to rob Rocco Mercurio. The evidence regarding the planned Liberace robbery provides a motive for the petitioner's participating in the charged crimes and provides narrative background for the charged conspiracy. It was admissible under New York law.

More importantly, as to the second requirement for a claim to habeas relief based on an erroneous evidentiary ruling, the petitioner has not offered any reason why this evidence was "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Collins v. Scully, 755 F.2d at 19. To the contrary, this evidence of an unconsummated plan to rob another individual was relatively inconsequential in light of the direct evidence regarding the charged crimes. As the trial court found, the evidence regarding the planned robbery, since the plans never even advanced to the stage where

10

they would be considered an attempted robbery, see Trial Tr. at 269, presented minimal risk of prejudice to the petitioner. There is no reason to believe that the jury convicted the petitioner of the charged crimes, including murder and arson, based on testimony regarding an aborted plan to rob an individual at a diner in Queens, rather than on the direct evidence presented regarding the incident in Staten Island.

The petitioner's argument is especially weak in light of the limiting instructions given by the trial judge, that the evidence is not proof of any "propensity or disposition to commit the charged crimes," that the evidence "is not offered for such a purpose and must not be considered by you for that purpose," and that the prosecution offered the evidence "solely for the purpose of showing the activities of the defendant and other people that evening and to show a common plan of conduct and to show a motive for the defendant and other people that evening, specifically, to get money for heroin." Trial Tr. at 2027. Since "juries are presumed to follow their instructions," Richardson v. Marsh, 481. U.S. 200, 211 (1987), these limiting instructions would have cured any error in admitting the challenged admission. Therefore, even if the admission of this evidence was improper under New York law, the petitioner cannot establish that the alleged error was "so pervasive as to have denied him a fundamentally fair trial." Collins v. Scully, 755 F.2d at 18. This claim is therefore denied.

## 2.    Assistance of Trial Counsel

The petitioner next argues that his trial counsel provided ineffective assistance by failing to prevent the admission of evidence regarding a pending charge that he had assaulted and threatened Charles Brennan, one of the cooperating witnesses, while they were incarcerated prior to the petitioner's trial. See Pet'r Mem. at 13-22. In order to demonstrate ineffective assistance

11

of counsel, a petitioner must satisfy the two-pronged test established in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner must demonstrate, first, that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," id. at 688, and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 698.

In analyzing a claim that counsel's performance fell short of constitutional standards, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices.'" Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690). Thus, a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy. See Strickland, 466 U.S. at 689. However, failure to pursue a particular course of action is not considered strategic when it is not a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." See Pavel v. Hollins, 261 F.3d 210, 218 (2d Cir. 2001).

The petitioner argues that his trial "counsel's unfamiliarity with the law forced him into a position where he was given the dire option of choosing between two separate rights, the right to testify, or, to forfeit the constitutional safeguard against self-incrimination." Pet'r Mem. at 16. In the case relied upon by the petitioner to support his contention that trial counsel was unfamiliar with the law, People v. Betts, 70 N.Y.2d 289 (1987), the New York Court of Appeals held that

12

"[a]llowing a defendant-witness' credibility to be assailed through the use of cross examination concerning an unrelated pending criminal charge unduly compromises the defendant's right to testify with respect to the case on trial, while simultaneously jeopardizing the correspondingly important right not to incriminate onself as to the pending matter." Id. at 295. Consistent with Betts, the petitioner's trial counsel was able to preclude cross-examination of the defendant concerning this pending charge if the defendant chose to testify in the instant case. February 14, 2001 Hearing Tr. at 7. Contrary to the petitioner's suggestion, Betts does not in any way suggest that allowing testimony from a witness other than the defendant regarding an incident for which charges remain pending against the defendant would somehow limit the defendant's right to testify in the instant case or his right not to incriminate himself in the pending case. Rather, the rationale underlying Betts – that permitting cross-examination of a defendant regarding uncharged crimes would exert "an undeniable chilling effect upon a real 'choice' whether to testify in one's own behalf," Betts, 70 N.Y.2d at 292 – applies only to the cross-examination of the defendant, not to the direct examination of a separate witness. There is simply no support for the petitioner's contention that trial counsel misunderstood or failed to investigate the relevant law. See Pet'r Mem. at 21.

In fact, trial counsel initially argued that the evidence should be excluded in its entirety. See February 13, 2001 Hearing Tr. at 35-39. The trial judge rejected this argument, concluding that the evidence that the petitioner assaulted Brenann was admissible as "classic consciousness of guilt evidence" and allowing the prosecution to elicit this testimony during its case-in-chief from a witness other than the defendant. February 14, 2001 Hearing Tr. at 5 (citing People v. King, 572 N.Y.S.2d 723 (N.Y. App. Div. 1991); People v. Herrera, 665 N.Y.S.2d 643 (N.Y.

13

App. Div.1997)); accord Trial Tr. at 1405-07 (reiterating same).

Under New York law, it is "settled that testimony that a defendant has threatened a witness is admissible on the ground that it 'has some tendency to prove consciousness of guilt.'" King, 572 N.Y.S.2d at 723 (quoting People v. Whaley, 534 N.Y.S.2d 201 (N.Y. App. Div. 1988)); see also U.S. v. Lord, 564 F.2d 831, 835 (2d Cir. 1977) ("Evidence of conduct designed to impede or prevent a witness from testifying is admissible to show consciousness of guilt.") (citations omitted). At a mid-trial offer-of-proof hearing, Charles Brennan testified that the petitioner grabbed him from behind and started cutting him with a "razor-like metal." Trial Tr. 1373. After the petitioner had attacked Brennan, the petitioner told him that "he had our statements in his cell." During his trial testimony, Charles Brennan similarly testified that the petitioner "pulled out a piece of metal sharpened like a razor and started cutting" him. Id. at 1499. He also testified that the petitioner told him "You snitch motherfucker, I got your statements." Id. at 1500. This evidence of an assault on a cooperating witness, coupled with references to the witness's "statements" and description of the witness as a "snitch," was admissible as a threat against a key trial witness demonstrating consciousness of guilt.

The petitioner also argues that the resolution of the charges related to this incident – the witness intimidation and witness tampering charges were dismissed, and the petitioner was acquitted of the assault charge – proves that the trial court in this case erred by admitting the evidence. See Pet'r Supplemental Mem. at 3-8. However, the standard for the admission of this evidence as consciousness of guilt was merely that it have "some tendency to prove consciousness of guilt." King, 572 N.Y.S.2d at 723. The petitioner's acquittal in a separate criminal case does not prevent the admission of the same evidence to show consciousness of

14

guilt in this criminal case.

Since trial counsel did, in fact, raise the argument the petitioner contends should have been raised, and the trial court properly rejected that argument, the petitioner's claim amounts to little more than frustration with trial counsel's failure to win a losing argument. The petitioner's frustration does not warrant a finding that he provided constitutionally defective assistance. Accordingly, this claim is denied.

### 3. Witness Bribery

In his third claim, the petitioner asserts that the prosecution's "complete use and reliance on cooperation agreements to obtain a conviction raises a credible issue as to prosecutorial misconduct resulting in the subornation of perjury" and the violation of state and federal witness bribery statutes. Pet'r Mem. at 22-23. The state court denied this claim pursuant to N.Y. Crim. Proc. L. § 440.10(2)(c), because the petitioner failed to raise the issue on direct appeal, see People v. Mannino, Ind. No. 329/1998 (Richmond Cty. Supreme Court Mar. 29, 2006), and this ground for denial functions as a procedural bar to federal habeas relief. See Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995). Therefore, the petitioner must establish either cause for the default and actual prejudice from the alleged constitutional violation or a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750.

The petitioner argues that his failure to raise this issue on direct appeal was caused by ineffective assistance of appellate counsel. See Pet'r Mem. at 24-26. Ineffective assistance of appellate counsel can excuse the failure to raise an issue on direct appeal, see Murray v. Carrier, 477 U.S. 478, 496 (1986), but the petitioner must establish both prongs of the previously discussed Strickland test. See Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (citing Evitts v.

15

Lucey, 469 U.S. 387, 396-97 (1985)). A habeas petitioner may establish constitutionally deficient assistance if he shows that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000). However, "[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a] [p]etitioner [i]s entitled." Aparicio, 269 F.3d at 99 (internal quotation marks and citations omitted). Finally, even if an attorney's performance were objectively unreasonable and unprofessional, the petitioner must still prove prejudice. That is, the petitioner must show "'a reasonable probability' that, but for the deficiency, 'the result of the proceeding would have been different.'" Aparicio, 269 F.3d at 95 (quoting Strickland, 466 U.S. at 694).

Since neither of the witness bribery statutes cited by the petitioner applies to leniency provided to a cooperating witness, see U.S. v. Stephenson, 183 F.3d 110, 118 (2d Cir. 1999) (holding that the federal anti-bribery statute does not apply to a prosecutor offering cooperating witnesses leniency "in exchange for their truthful testimony"); People v. Sease, 696 N.Y.S.2d 430 (N.Y. App. Div. 1999) (stating in dicta that New York's witness bribery statute "was not intended to apply to lenient treatment afforded a cooperating witness"), appellate counsel cannot be faulted for choosing to raise another argument – that the evidence of the planned Liberace robbery was improperly admitted – in lieu of this particular argument. Since the petitioner cannot establish that this was a significant and obvious issue that should have been raised or that he was prejudiced by appellate counsel's failure to raise the issue, he has not demonstrated cause for his procedural default in state court. Since there is no indication that a fundamental miscarriage of justice would result if this claim were not considered, the claim that the

16

cooperation agreements constituted witness bribery is denied as procedurally barred.

In his § 440 motion, the petitioner also argued that the transcript from Charles Brennan's sentencing constituted newly discovered evidence that the prosecution had suborned perjury, and "place[d] in doubt the reliability of the prosecution[']s full disclosure of the cooperation agreement" pursuant to their obligations under Brady v. Maryland, 373 U.S. 83 (1963). Motion to Vacate Judgment at 20, People v. Mannino, Ind. No. 329/1998 (Richmond Cty. Supreme Court Mar. 29, 2006). The prosecution has a due process obligation to disclose "material evidence that could be used to impeach a key witness, including "promises that the prosecution makes to key witnesses in exchange for their testimony." See Shabazz v. Astrue, 336 F.3d 154, 161 (2d Cir. 2003) (citing Kyles v. Whitley, 514 U.S. 419, 433 (1995); Giglio v. United States, 405 U.S. 150, 154-55 (1972)). However, a habeas petitioner's "mere speculation that exculpatory evidence was withheld is insufficient to warrant habeas relief," Mallet v. Miller, 432 F.Supp.2d 366, 377 (S.D.N.Y. 2006). Indeed, to establish a Brady violation, a petitioner "must initially establish that the evidence sought, in fact, existed." Graham v. Ricks, No. 02-CV-0303, 2004 WL 468579, at *5 (N.D.N.Y. April 7, 2004).

The petitioner's claim that an undisclosed promise was made to Charles Brennan is based solely on the transcript from Brennan's sentencing proceeding. At this proceeding, Brennan's counsel initially advised the sentencing judge that according to Brennan "there were representations and promises made" to Brennan that were "different that the promise outlined in [his] cooperation agreement." Sentencing Tr. at 2-3, People v. Brennan, Nos. 90074/99, 90073/99 (Richmond Cty. Supreme Court June 7, 2001). Brennan therefore sought to vacate his plea because "his agreement was obtained in a fraudulent manner." Id. The defendant refused to

disclose the nature of these alleged promises, id. at 5,8, but his counsel indicated that Brennan had been promised that he would "not serve additional time" for this guilty plea, beyond the sentence he received for a separate guilty plea. Id. at 10-11.

Later in the sentencing proceedings, however, Brennan recanted all of these allegations. When pressed by the sentencing judge on the details of the alleged promise, Brennan admitted he had been lying. "I lied. I'm trying to get my plea back. I lied about the whole thing. They didn't promise me nothing but an open felony, ten to 25 years." Id. at 19. The defendant continued, "I lied. I lied, Your Honor. I'm admitting to lying in your courtroom about what I just said about the allegations." Id. The sentencing judge then made clear that each aspect of Brennan's prior allegations had been false, and Brennan withdrew his application to vacate the plea. Id. at 19-20.

Based on this complete and unequivocal recantation, the state court determined that the transcript from Brennan's sentencing was "evidence of nothing" and rejected the petitioner's suggestion that the prosecution had made undisclosed promises to secure testimony against the petitioner. Decision and Order at 2. People v. Mannino, Ind. No. 329/1998 (Richmond Cty. Supreme Court Mar. 29, 2006). This factual determination that no undisclosed promises were made to secure Brennan's testimony is presumed to be correct under 28 U.S.C. § 2254(e)(1). See Shabazz v. Astrue, 336 F.3d at 161 (existence of undisclosed cooperation agreements is a factual determination warranting deference under 28 U.S.C. § 2254(e)(1)). Accordingly, the petitioner cannot establish that the prosecution withheld any information that could have been used to impeach Charles Brennan. This aspect of the petitioner's claim is also denied.

### 4.    Crime Scene Photographs

The petitioner next challenges the admission of "extremely inflammatory and prejudicial

gruesome photographs of the charred and bound bodies of the two" victims. Pet'r Supplemental Mem. at 9. As previously discussed, for an alleged evidentiary error under state law to constitute a due process violation under the federal Constitution, a petitioner must show that error was so egregious that it denied him the right to a fundamentally fair trial. See Collins, 755 F.2d at 18. This requires establishing first that the evidence was erroneously admitted under New York law and second that the evidence was "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Id. at 19.

Under New York law, crime scene photographs are generally admissible if they tend to prove or disprove a material fact in issue, "even if the photographs portray a gruesome spectacle." Benjamin v. Greiner, 296 F.Supp.2d 321, 332 (E.D.N.Y. 2003); accord Robles v. Senkowski, No. 97 Civ. 2798, 2002 WL 441153 (S.D.N.Y. Mar. 21, 2002) (unpleasant crime scene photograph relevant to illustrate the nature of the victim's wounds and the manner in which they were inflicted); People v. Ponce, 624 N.Y.S.2d 283 (N.Y. App. Div. 1995) (photographs properly admitted to illustrate the extent of a victim's injuries, relevant to the defendant's intent, and to corroborate medical expert testimony). Moreover, even the erroneous admission of these photographs only warrants habeas relief if they "substantially and injuriously affected the jury's verdict." Benjamin, 296 F.Supp.2d at 332. (citing Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993).

In this case, the petitioner's trial counsel acknowledged that the four photographs selected for use in the trial were the "least objectionable of the lot" but nonetheless argued that they should be excluded because their "sole purpose is to arouse the emotions of [the] jury and prejudice the defendant." Trial Tr. at 74-75. The prosecutor argued that the photographs were

19

relevant to illustrate and corroborate several of the witnesses' testimony, and to rebut the suggestion that there was no forensic evidence in the case. Id. at 76-77. The trial judge agreed that the photographs were not particularly gruesome and found that they were "clearly relevant" to "illustrate and corroborate various testimony." Id. at 78.

The petitioner has not established that the admission of this limited number of crime scene photographs was erroneous, much less that it substantially affected the jury's verdict. This claim is therefore denied.

### 5.    Identification Testimony

The petitioner's final claim is that the admission of identification testimony without following the statutory notice requirements, see N.Y. Crim. Proc. L. § 710.30, deprived the petitioner of due process and a fair trial. However, these notice requirements are not "constitutionally mandated." Brown v. Harris, 666 F.2d 782, 785 (2d Cir. 1981). Accordingly, federal habeas relief is not available for the petitioner's claim. See McCullough v. Bennett, 438 F.Supp.2d 185, 189 (W.D.N.Y. 2006) (a claim based on the notice provisions of § 710.30 are not cognizable on federal habeas review). This claim is also denied.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. Because the petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2) (1996), no certificate of appealability will be granted. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

/S/

Allyne R. Ross
United States District Judge

Dated: July 15, 2009
      Brooklyn, New York

SERVICE LIST

Pro Se Petitioner
Mario Mannino
01A2142
Auburn Corr. Facility
135 State Street
PO Box 618
Auburn, NY 13021

Counsel for Respondent
Anne Elizabeth Grady
Richmond County District Attorney's Office
Appeals Bureau
130 Stuyvesant Place
Staten Island, NY 10301